In the Matter of HERMAN C. POLLACK, an Attorney, Respondent.

First Department, February 7, 1936.

*Louis Connick* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*George Trosk*, for the respondent.

MARTIN, P. J. The respondent was charged by the Association of the Bar of the City of New York with professional misconduct and the matter sent to a referee for hearing. The latter has found him guilty as charged.

In October, 1932, the respondent, as attorney for Frances W. King, brought an action in the Supreme Court, New York county, against Bruce Barton to recover damages for alleged slander. Thereafter he stated and represented to Mr. Barton's attorney, in substance, that his client, the plaintiff in the action, had written and prepared for publication the manuscript of a book containing scandalous and libelous statements seriously reflecting on the life and character of Mr. Barton and that if the book were published it would cause him great injury. The respondent also stated to Mr. Barton's attorney, in substance, that if Mr. Barton would

settle the claim made by the plaintiff in the action by the payment of a large sum of money the book containing the scandalous and libelous statements regarding Mr. Barton would not be published. If such a settlement were not made, the book would be published. The respondent also stated to Mr. Barton's attorney that in the event no settlement was made an order for the arrest of the defendant would be obtained and executed. Thereafter he did procure an order for Mr. Barton's arrest and when he called at his residence with a deputy sheriff for the purpose of executing said order, he again tried to procure a settlement of his client's claim by stating to Mr. Barton's attorney, in substance, that if he paid him the sum of $10,000, the order of arrest would not be executed and the book above referred to would not be published. Mr. Barton and his attorney refused to make any settlement of the claim made by the plaintiff in the slander action and thereafter the respondent arranged with a linotyper to have galley proofs of the book printed. He paid the linotyper out of his own funds the sum of $152.64 for the work done, no part of which was advanced by his client.

It will serve no useful purpose to recite the evidence in the case. The issue turned upon what was said in conversations upon two occasions between the respondent and Mr. Barton and Mr. Charles E. Kelley, his attorney. A question of veracity was presented as between the respondent on the one hand and Mr. Barton and his attorney on the other. In this connection the referee states:

" I believe that the testimony of the witness Charles E. Kelley is the truth. Kelley impressed me as being a man of high ideals and integrity. Kelley testified with scrupulous exactitude and displayed no animus toward the respondent. He came into court with his office records and constantly refreshed his recollection from them while testifying. As between Kelley and the respondent I unhesitatingly accept Kelley's testimony.

" I also believe that the witness Bruce Barton testified truthfully with respect to his conversation with the respondent."

We concur in the conclusion of the referee. It is most improbable that both Mr. Barton and his attorney would have testified falsely to destroy the professional career of the respondent. No possible motive for such conduct appears. Upon the other hand, the testimony of the respondent that he accepted Mrs. King's statement as to the contents of her manuscript and, without an examination thereof, advised her that it was not libelous, is incredible upon its face, and especially so in the light of respondent's demonstrated knowledge at least of the general nature of the manuscript and the fact that it had been declared by two attorneys to be a criminal libel upon Mr. Barton. Notwithstanding this knowledge the

respondent advanced to Mrs. King the money for the typesetting. Subsequently Mrs. King delivered a galley proof to Mr. Barton, together with a letter dated April 6, 1933, upon which she was convicted of attempted blackmail. True it is that this letter was written subsequent to the time when the respondent ceased to act as her attorney, and, therefore, the respondent contends there was prejudicial error in receiving said evidence. The evidence was relevant, however, as showing the character of the manuscript and the purpose for which it was linotyped.

Irrespective of whether the manuscript was actually libelous, or the use finally made of it by its author, the evidence establishes the fact that the respondent attempted to force a cash settlement of the slander action against Mr. Barton by the representation that the proposed book contained scandalous statements concerning Mr. Barton and that it would be published if the action were not settled.

We are too frequently reminded in recent times of the fact that some members of the bar have very little conception of true ethical principles. An attorney who lends himself to any such attempt at blackmail as here shown should not be permitted to remain a member of an honorable profession.

The respondent should be disbarred.

McAVOY, O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Respondent disbarred.